**Jeffrey Lynn WILKINSON, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00839–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed April 27, 2017

Rehearing Overruled June 22, 2017

Discretionary Review Refused
September 20, 2017

821

Robert A. Scardino, Jr., Houston, TX, for Appellant.

Clinton Morgan, Houston, TX, for State.

Panel consists of Justices Jamison, Wise, and Jewell.

## OPINION

Martha Hill Jamison, Justice

Appellant Jeffrey Lynn Wilkinson appeals from his misdemeanor conviction for assault involving family violence. After a jury found appellant guilty, the trial court assessed his punishment at one year confinement and suspended that sentence for two years. In five issues, appellant contends the trial court erred in admitting certain hearsay evidence, including an EMS incident report, Facebook posts by the complainant, and several statements by the complainant and her friend. We affirm.

### Background

Appellant was charged with assaulting his wife; however, by the time of trial, the complainant had recanted her earlier statements, and she testified that she did not know how she sustained her injuries. The State therefore relied on other evidence to prove appellant's guilt. Crystal

Farr, the complainant's friend, testified that in the early morning hours of March 20, 2015, she observed posts from the complainant on Facebook that caused her concern. Screenshots of the Facebook posts in question were admitted as State's exhibit 1 over a hearsay objection. The posts included the following statements, apparently by the complainant: "My husband is angry again I and [sic] can't stop being scared ... trying, tried, nobody will listen. I was afraid to tell anyone. I finally did and it seems like I didn't. Can anyone hear me? Don't know what to do." "Always drunk at night and in a rant. Why am I here? He's yelling right now telling me I come from a family w/o money." "I'm scared and freaking ou[ ]t." Exhibit 1 also reveals that Farr was one of the people communicating with the complainant on Facebook that morning. At one point, Farr posted "I have been trying to call you[,] your phone is going straight to voicemail and mailbox is full." Another person asked the complainant if appellant had "layed [sic] a hand on her" and requested the complainant text the person, but the complainant replied "can't." Another person then posted, "Anyone know where she lives have the police go by there check on her [sic]."

Farr, who lived about three hours away from the complainant, called 9-1-1 and requested a "welfare check" on the complainant. Farr then managed to reach the complainant on the phone after numerous attempts. According to Farr, the complainant was crying, fearful, panicked, and hysterical. The complainant told Farr that appellant had hit her, that they had been drinking, they argued, and then he hit her. The complainant then left the house and drove away in her car. Farr further stated that the complainant texted two photographs of herself to Farr, showing a cut above her eye that was bleeding. At some point, a police officer called Farr from the complainant and appellant's residence.

Based on her conversation with the officer, Farr instructed the complainant to drive to a police station. Farr also said that she could hear appellant in the background during the call with the officer, and appellant said, "That b**** called the cops on me. Wait until she gets here. I'll get her."

Farr further testified that in the afternoon of the same day, she again talked to the complainant on the phone. The complainant said that the abuse had been going on since right after she became pregnant with the couple's toddler son. The complainant further expressed fear that her ex-husband, not appellant, would take custody of her older daughter because of the abuse. A few days later, when Farr and the complainant spoke again, the complainant indicated that she had been verbally and emotionally abused in addition to physically. The complainant also revealed that she was again living with appellant. By August 2015, the complainant said that she was not afraid of appellant and did not want the case against him to go forward. Farr indicated that she and the complainant were no longer friends. Farr also said that she lost the pictures of the complainant's injuries.

Deputy Harris County Constable Kristen Boethel testified that she was one of the officers who went to the complainant and appellant's residence on March 20, 2015 to perform a welfare check. According to Boethel, appellant took about five minutes to answer the door and then became aggressive, angry, and belligerent towards the officers. Boethel spoke to Farr on the telephone, and Farr reported that the complainant had been assaulted by appellant and Farr had received photographs of the complainant's injuries. Boethel also talked with the complainant on the telephone. The complainant sounded frightened and was crying, and she confirmed that appellant had hit and injured

her. The complainant agreed to come to the police station, where Boethel observed her disheveled, scared, shaking, and crying, with a cut above her left eye and a knot just below the hairline, blood running down the left side of her face, and with red markings on her cheeks, neck, shoulders, and arms. The facial injuries appeared to be consistent with the complainant being punched in the face. Photographs of the injuries were taken at the station and admitted into evidence. Boethel said that the complainant did not appear intoxicated or otherwise impaired.

Boethel called EMS to examine the complainant, and the EMS incident report was admitted into evidence over appellant's hearsay objection. The report states in relevant part:

> 42 year old female was having a verbal argument with her husband. Patient told EMS that the two were arguing when the patient's husband started to hit her repeatedly in the face. Patient was pushed in to closet and struck in the face with per patient possibly a closed fist. Patient told EMS that she did not loose [sic] consciousness.... Patient was assessed with only findings being a small abrasion with some swelling to the left side of patient's forehead. Patient also had some dried blood in the same area....

The complainant signed the report as refusing transport to a hospital.[1]

The defense called the complainant and appellant to testify. The complainant stated that she told the prosecutor that she did not want appellant prosecuted; in fact, she still lives with appellant, says she is not afraid of him, and previously went to court to urge the judge to allow appellant to stay in their home. She explained that she suffers from panic attacks and takes Xanax for anxiety. She said that the attacks can affect her memory and acknowledged that her Xanax prescription bottle listed a warning to avoid ingesting alcohol while on the medication. The complainant said that on the morning in question she had a couple of beers with a friend at a restaurant, and she and appellant argued when she got home because he was angry that she had been out drinking. She had two more beers during the course of the argument and eventually took a Xanax because she was stressed by the argument and wanted to go to sleep. At some point, she went into the couple's walk-in closet to get away from appellant and go to sleep. When she woke up, she realized that her face had been injured; she became scared and left the house. She said that at the time, she thought appellant had hit her. Now, however, she thinks that the combination of the beers and the Xanax makes her memory of how she got hurt "blurry." Regarding whether appellant hit her that evening, the complainant stated, "I no longer am sure about that." She also said that she could not say for sure that he did not hit her. She thinks he followed her into the closet that morning but her memory is blurry.

The complainant additionally recounted that about two weeks before the alleged assault, appellant had gotten angry at her, raised his fist, and said "I wish I could. I wish I could." She thinks that this might explain why she thought he had hit her on the morning in question. She also described appellant on more than one occasion pointing his fingers in the shape of a gun at her head and saying he understood why a man would kill his wife.

---

1. The State also called an investigator with the constable's office and a caseworker with the district attorney's office to testify. They both discussed why victims of domestic abuse will sometimes minimize or recant their accusations after a period of time passes.

On cross-examination, the prosecutor asked the complainant about a written statement she made for Officer Boethel on the morning of the alleged assault. The complainant testified that she believed the statement at the time she wrote it. In the statement, the complainant said that appellant was yelling at her and calling her a horrible mother and would not stop, so she went to the closet to get away from him. The statement further recounts that appellant opened the closet door, screamed at the complainant, and hit her. The complainant left the house scared and drove away.[2]

In his testimony, appellant acknowledged that he consumed 4–6 beers during the course of the night and early morning hours and that he and the complainant argued about her going out, but he denied hitting her. He also acknowledged becoming aggressive with the officers that came to his house to check on the complainant, but he explained that his reaction was in response to one of the officer's planting a foot inside his doorway.

### Standards of Review

■ We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Hearsay is defined as a statement, other than one made by the declarant while testifying at the current trial or hearing, offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d).

Hearsay is generally inadmissible; however, the Texas Rules of Evidence contain a number of exceptions under which hearsay is deemed admissible. *Id.* 802, 803. Several of these exceptions will be discussed below.

■ Errors in the admission of hearsay evidence are typically nonconstitutional in nature; accordingly, even when such error is established, it will be disregarded unless it affected a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). When assessing harm, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

### The EMS Records

■ In his first issue, appellant contends that the trial court erred in admitting the EMS incident report over his hearsay objection. Appellant acknowledges that an exception to the hearsay rule exists for records of a regularly conducted activity that meet certain criteria set forth in the Rules of Evidence. *See* Tex. R. Evid.

**2.** Although the statement itself was not offered into evidence, the complainant confirmed its contents during cross-examination.

803(6); 902(10).[3] Appellant argues, however, that the State failed to fulfill one of the requirements when it failed to serve the report and required accompanying affidavit at least fourteen days before trial. *See id.* 902(10); *see also Landrum v. State*, 153 S.W.3d 635, 638–39 (Tex. App.—Amarillo 2004, no pet.) (explaining that the proponent of the evidence has the burden to prove each of the requirements set out in Rule 902(10)).

Defense counsel raised the hearsay objection during a pretrial hearing and told the judge that he had never received the report and affidavit, much less fourteen days before trial. Defense counsel even allowed the prosecutor to check defense counsel's files for the documents, and it appears from the record that the prosecutor looked but did not find the documents. In response, the prosecutor initially emphasized that the EMS report and accompanying affidavit had been filed with the court itself over fourteen days before trial, and a certificate of service signed by a prior prosecutor showed defense counsel received notice of this filing. While such filing and notice may have been adequate under a prior version of Rule 902, the rule was modified effective in 2014 to require delivery of a self-authenticating record to the opposing party fourteen days before trial. Tex. R. Evid. 902(10) & cmt. to 2014 change; *see also* Tex. Sup. Ct. Misc. Docket No. 14–9080 (amending Rule 902(10) effective Sept. 1, 2014).

The prosecutor additionally represented that he had in his possession a fax confirmation sheet showing "successful transmission" of an "EMS records affidavit" to defense counsel. The prosecutor did not claim, however, that the EMS report itself was sent to defense counsel, as required by Rule 902(10), and it does not appear from the record that the prosecutor actually provided the judge with a copy of the fax confirmation. No such document is found in the record on appeal. Nonetheless, the trial judge concluded that the State had satisfied its obligations and overruled appellant's objection.

However, even if the trial judge erred in admitting the EMS report, such error was harmless. *See* Tex. R. App. P. 44.2(b); *Shaw*, 329 S.W.3d at 653. As detailed above, there were several sources of evidence that on the morning in question, the claimant stated appellant had hit her. In addition to the EMS report, Farr and Boethel both testified the complainant made these allegations; additionally, the complainant herself acknowledged she wrote a statement saying appellant hit her. The EMS report narrative does provide details that some of the testimony does not, i.e., that appellant hit the complainant "re-

---

**3.** Rule 803(6) provides that a record of an act, event, condition, opinion, or diagnosis is not excluded by the rule against hearsay if

    (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

    (B) the record was kept in the course of a regularly conducted business activity;

    (C) making the record was a regular practice of that activity;

    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

    (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness: "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

Tex. R. Evid. 803(6). Rule 902(10) provides that for business records to be considered "self-authenticating," meaning they require no extrinsic evidence of authenticity, they generally must be accompanied by an affidavit and the records and affidavit must be served on the other party at least 14 days before trial. *Id.* 902(10).

peatedly" with his closed fist and pushed her into the closet.

Based on the quality and quantity of the evidence indicating appellant hit the complainant on the morning in question, however, any error in the admission of the EMS report either did not influence the jury or had only a slight effect. *See Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding erroneous admission of details of extraneous offenses was harmless because other properly admitted evidence established the same information). Accordingly, we overrule appellant's first issue.

### The Facebook Posts

■ In his second issue, appellant contends that the trial court erred in admitting State's exhibit 1—containing screen shots of Facebook posts from the morning of the alleged assault—under the present-sense-impression exception to the hearsay rule. *See* Tex. R. Evid. 803(1). A "present sense impression" is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Tex. R. Evid. 803(1). "The rule is predicated on the notion that 'the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes.' " *Fischer v. State*, 252 S.W.3d 375, 381 (Tex. Crim. App. 2008) (quoting *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545, 554 (1976)). "Once reflective narratives, calculated statements, deliberate opinions, conclusions, or conscious 'thinking-it-through' statements enter the picture, the present sense impression exception no

longer allows their admission." *Id.*[4] The trial court overruled appellant's general hearsay objection to exhibit 1 but did not state the basis for the ruling.

■ The Facebook posts in question included the complainant's saying, "My husband is angry again I and [sic] can't stop being scared. . . . I was afraid to tell anyone. I finally did and it seems like I didn't. "Always drunk at night and in a rant. He's yelling right now telling me I come from a family w/o money." And, "I'm scared and freaking ou[ ]t."[5] On appeal, appellant specifically highlights two portions of these statements that he contends described memories and not present-sense impressions: (1) the reference to the complainant being previously afraid to tell anyone but then having done so and (2) the reference to appellant "[a]lways drunk at night and in a rant." Statements regarding memories would not typically fit within the definition of "present sense impressions." *See generally McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008) (contrasting the present-sense-impression exception, which relates to statements made about a particular event in close proximity to the event itself, with the excited-utterance exception, which relates to a startling event but which may encompass statements concerning a much earlier event that are triggered by the recent startling event).

Appellant's objection in the trial court was a general hearsay objection to the entire exhibit. Appellant did not highlight specific objectionable statements for the trial court as he now does on appeal or argue that certain statements related to memories are not present sense impres-

---

4. The State also argued in support of admission of the Facebook posts under the hearsay exception for statements of then-existing mental, emotional, or physical condition. *See* Tex. R. Evid. 803(3).

5. As discussed above, exhibit 1 contained additional posts by several other people as well as the complainant herself.

sions. When the State offered exhibit 1 into evidence, defense counsel conducted voir dire examination of Farr outside the presence of the jury in an attempt to ascertain whether the complainant actually wrote the posts associated with her name in the exhibit. The examination related to the general hearsay objection to the entire exhibit and did not touch on any specific posts.[6] Several of the complainant's Facebook posts are clearly statements of present-sense impressions or then-existing mental, emotional, or physical condition, e.g., "My husband is angry again," "[I] can't stop being scared," "He's yelling right now telling me I come from a family w/o money," and, "I'm scared and freaking ou[ ]t."

▮ When evidence is admitted, a part of which is admissible and a part of which is not, it is incumbent on the party objecting to the admissibility of the evidence to specifically point out what part is inadmissible to preserve the alleged error. *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g); *White v. State*, No. 05-15-00819-CR, 2017 WL 908787, at *6 (Tex. App.—Dallas Mar. 8, 2017, no. pet. h.) (mem. op.; not designated for publication). Because appellant failed to object to the specific statements regarding which he now complains about on appeal, he failed to preserve his complaint for appellate review. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (holding trial objections were insufficient to preserve error in the admission of portions of audiotapes because the objections did not specifically point out which portions of the tapes were allegedly inadmissible); *Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992) ("The trial court need never sort through challenged evi-

dence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection."). Accordingly, we overrule appellant's second issue.

### Statements by Complainant to Farr

▮ In issue three, appellant asserts that the trial court erred in overruling his hearsay objection to Farr's testimony concerning a statement the complainant made during the afternoon after the alleged early-morning assault. Appellant specifically complains regarding Farr's recounting that the complainant revealed that afternoon the "verbal and physical abuse[ ]had been going on for a while." At the time of the testimony, appellant objected on hearsay grounds, and he now explains that the statement was too far removed from the alleged abuse to fall under the excited-utterance exception to the hearsay rule. *See* Tex. R. Evid. 803(2).

▮ Generally, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *E.g., Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of

---

6. During the voir dire examination, Farr indicated that she knew the complainant wrote the posts at or around the time of the alleged

assault because the complainant told appellant so on the telephone shortly thereafter.

ruling. This rule applies whether the other evidence was introduced by the defendant or the State."). Later during Farr's direct testimony apparently regarding the same conversation, Farr stated that the complainant told her the abuse began "right after she found out she was pregnant" with appellant's child. Appellant did not object to this testimony. Other testimony from multiple sources firmly established that appellant and the complainant had a young child at the time of the alleged assault; therefore, this later unobjected-to testimony provided substantially the same information as did the statement appellant complains about on appeal. Accordingly, even if the trial court improperly admitted the prior testimony, no reversible error has been established. *See Leday*, 983 S.W.2d at 718; *Chapman*, 150 S.W.3d at 814. We overrule appellant's third issue.

### Farr's Statement to Boethel

█ In his fourth issue, appellant contends that the trial court erred in admitting Farr's statement to Boethel that appellant had assaulted the complainant. Specifically, Boethel testified, "Mrs. Farr told me that her friend, [the complainant], had been assaulted by her husband." Appellant objected on hearsay grounds, and the prosecutor urged that the statement was admissible under the excited utterance exception to the hearsay rule. *See* Tex. R. Evid. 803(2).

█ An "excited utterance" is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* The reasoning behind the excited utterance exception is psychological: when a person is in the instant grip of violent emotion, excitement, or pain, that person ordinarily loses capacity for the reflection necessary for fabrication, and the truth will come out. *Zuliani*

*v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Id.*; *Ricondo v. State*, 475 S.W.2d 793, 796 (Tex. Crim. App. 1971). In determining whether a hearsay statement is admissible as an excited utterance, the court may consider as factors the time elapsed and whether the statement was in response to a question. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The focus, however, must remain on whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event at the time of the statement. *Id.* In short, a reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964).

Appellant specifically argues that Farr's statement regarding the assault did not qualify as an excited utterance because there was no showing (1) "of when the complainant made the statement in relation to when Farr relayed the statement to Boethel" or (2) "that Farr made the statement so close in time to a startling event that she did not have the capacity for reflection." We disagree with both contentions.

The evidence supports the trial court's reasonable conclusion that Farr relayed the statement to Boethel not long after receiving the information from the complainant and while Farr was still dominated by the emotions, excitement, fear, or pain of the startling event. *See Salazar*, 38 S.W.3d at 154. At the time of Boethel's testimony, it had already been established by Farr's testimony and other evidence that Farr became concerned regarding the complainant's welfare around 2:45 a.m. Ex-

hibit 1 contained screenshots of the complainant's Facebook page taken at 2:56 a.m., which showed posts by Farr suggesting she was looking for the complainant's address in order to relay it to police. Farr testified that she then called 9–1–1. Boethel indicated that when she spoke with Farr, Farr was crying, speaking very fast, frantic, and panicked. Although a precise time was not given for Boethel's conversation with Farr, it is clear from the testimony and the chronology of the morning's events that the conversation occurred close in time to when Farr learned that her friend may have just been assaulted and while she was still very concerned and, according to Boethel, frantic and crying regarding whether her friend was safe. In light of this evidence, the trial court did not abuse its discretion in overruling the hearsay objection pursuant to the excited utterance exception. *See Nadal v. State*, 348 S.W.3d 304, 318 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding the State presented evidence on which the trial judge could conclude that at the time of making the hearsay statement, the declarant was dominated by the emotions, excitement, fear, or pain of learning his child was at the hospital because of a reported dog bite). Accordingly, we overrule appellant's fourth issue.

### Statements regarding Photographs

■■■ Lastly, in his fifth issue, appellant asserts that the trial court erred in overruling his hearsay objection to Boethel's testimony that Farr told Boethel about having seen photographs of the complainant's injuries on the morning in question. Farr herself had testified she received photographs from the complainant, but lost them. Appellant argues the trial court erred in admitting Boethel's hearsay testimony as a prior consistent statement of Farr. A prior consistent statement is not considered hearsay when the statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive and the declarant made the statement before the alleged improper influence or motive arose. Tex. R. Evid. 801(e)(1); *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). Although this hearsay exclusion was discussed at trial, we will affirm a trial court's evidentiary ruling if it is correct under any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Price v. State*, 502 S.W.3d 278, 283 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

According to Boethel, Farr's statements about receiving the photographs were made during the same conversation in which Farr told her that the complainant had been assaulted by appellant. As discussed above, Farr's statement that an assault occurred was admissible as an excited utterance because at the time, Farr was still dominated by the emotions, excitement, fear, or pain of the startling event. *See Nadal*, 348 S.W.3d at 318; *Salazar*, 38 S.W.3d at 154. For the same reasons, Farr's statement to Boethel regarding the existence of photographs was also admissible under the excited utterance exception. Accordingly, we overrule appellant's fifth issue.

We affirm the trial court's judgment.