**Vincente Luis HERRERA a/k/a Vincent Lewis Herrera, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-16-00169-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed August 15, 2017

Joseph Kyle Verret, Galveston, TX, for Appellant.

Rebecca Klaren, Jack Roady, Galveston, TX, for State.

Panel consists of Chief Justice Frost and Justices Donovan and Wise.

## OPINION

John Donovan, Justice

A jury convicted appellant Vincent Luis Herrera a/k/a Vincent Lewis Herrera[1] of aggravated robbery. Appellant pled "true" to two enhancement paragraphs and the jury sentenced him to confinement for fifty years in the Institutional Division of the Texas Department of Criminal Justice. In two issues, appellant complains of error in the jury charge and the assessment of attorney's fees. We reform the judgment as to attorney's fees and the deadly weapon finding and, as reformed, affirm the judgment.

### BACKGROUND

On September 20, 2014, the complainant and his roommate were asleep in their home. The roommate was awakened by a loud noise. Two men entered the home; the roommate identified one of them as Aaron Herrera (appellant's brother). The complainant was being held at gunpoint. The roommate ran to the home of his neighbor, a police officer, and said two men were robbing his home with a gun.

The complainant testified that he awoke to a loud noise. He went to investigate and found two Hispanic men. The smaller one, appellant's brother, was holding a computer monitor. When the complainant asked what they were doing, the brother dropped the monitor. The larger man, identified by the complainant as appellant, pulled out a gun and demanded money. The brother was screaming, "Just shoot him. He's got more money." The complainant recognized the brother from two days prior, when he came to their house with an acquaintance. The complainant testified that on that day he had just been paid about $1,600 in cash for a flooring job and pulled it out of his pocket to pay the acquaintance.

Appellant "pistol whipped" the complainant six or seven times, striking the complainant in the head and hands as he tried to protect his face. The complainant was bleeding, dazed, and hurt—he had a cut on his head and an injury to his hand. The complainant gave appellant his wallet and the two men found his cell phone. They took the Xbox and television and ran out of the house.

The neighbor-police officer called in the robbery and went to the complainant's house with his department-issued assault rifle to assist, until other officers arrived. When appellant's brother ran out of the house, the neighbor-police officer tackled him. During the struggle, the assault rifle discharged once. The complainant yelled out, "The one with the gun went that way" and pointed. Ultimately, the complainant

---

1. The trial Court determined appellant's name should be corrected to "VINCENTE LUIS HERRERA A/K/A VINCENT LEWIS HERRERA" because both names have been used in court documents.

assisted the neighbor-police officer in detaining appellant's brother.

Meanwhile, Officer Leonard Crouch had arrived on scene and pursued a suspect toward the back of the house where there was a chain link fence; he heard someone climbing it. Crouch saw the suspect making his way along the front of the house toward the front gate. Crouch was aware other officers were arriving on the scene. Crouch was assisting the neighbor-police officer when other officers informed him they had the other suspect in custody. At the scene, Crouch identified that suspect as the person he had seen in the back yard running out of the front gate. In the courtroom, Crouch identified appellant as that suspect. A gun was later found in the area Crouch had seen appellant running along the fence. Two cell phones, a wallet, and a camera were found in appellant's possession. The complainant testified that one of the phones and the wallet were his. Appellant was charged and convicted of aggravated robbery.

### CHARGE ERROR

In his first issue, appellant asserts error in the jury charge. Appellant first claims the trial court erred in failing to instruct the jury as to which elements of the charged offense each defined mental state applied. Next, appellant asserts the trial court erred in failing to limit the mental-state definitions to the conduct elements required for the charged offense. Appellant concedes the record reflects no objection was made to the charge. The State, without conceding error, addresses only the harm analysis.

■ Aggravated robbery with bodily injury contains all three conduct elements: (1) result of conduct, (2) nature of conduct, and (3) circumstances surrounding conduct. *See Ash v. State,* 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). Causing

bodily injury is a result-of-conduct element; unlawful appropriation is a nature-of-conduct element; and requiring the injury to occur in the course of committing a theft is a circumstances-surrounding-conduct element. *Id.*; *see also* Tex. Penal Code §§ 29.02, 29.03, 31.03. However, even if an offense contains all the conduct elements referenced in the mental-state definitions, a trial court errs if it fails to limit the mental-state definitions to the conduct element, or elements, to which they apply. *Ash,* 930 S.W.2d at 195.

■ The definitions given in the abstract portion of the charge for the mental states of intentionally, knowingly and recklessly were as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct, or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the cir-

cumstances as viewed from the actor's standpoint.

These definitions correctly state the law and track the statute. *See* Tex. Penal Code § 6.03. The charge included all three conduct elements and specifies which mental state applies to the various conduct elements:

- "Intentionally" applies to nature of conduct and result of conduct;

- "Knowingly" applies to nature of conduct, result of conduct and circumstances surrounding conduct; and

- "Recklessly" applies to result of conduct and circumstances surrounding conduct.

The definitions, however, do not instruct the jury as to which elements of the charged offense each defined mental state, and each conduct element, applies. *Cf. Hughes v. State*, 897 S.W.2d 285, 296 n. 16 (Tex. Crim. App. 1994) (providing example of correct jury charge when all three conduct elements are implicated); *see also Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Fields v. State*, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999); *Ash*, 930 S.W.2d at 195. An example of an appropriate jury charge in a case such as this would be,

■ The following definition applies to the mental state in causing bodily injury:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Fields*, 966 S.W.2d at 739 (citing *Hughes*, 897 S.W.2d at 296 n. 16). Such an instruction should be given for each element of the offense, each applicable mental state, and each applicable conduct element. *Id.* Without a specification of the element of the offense to which each mental state applies, ascribing multiple conduct elements to a single mental state fails to adequately limit the mental state definitions to the conduct element, or elements, to which they apply. *See Hughes*, 897 S.W.2d at 296 n. 16. Accordingly, there is error in the charge.

■ Reversal is warranted in a case in which the defendant voiced no objection to the charge only if the error resulted in harm so egregious that the defendant did not have a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Lopez v. State*, 515 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Egregious harm is a difficult standard to meet. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). For harm to be egregious, it must be actual and not just theoretical. *Id.* In making this determination, we consider 1) the complete jury charge, 2) the arguments of counsel, 3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and 4) any other relevant factors revealed by the record as a whole. *See Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013). "Neither party bears a burden of production or persuasion with respect to an *Almanza* harm analysis, the question being simply what the record demonstrates." *Id.* (citing *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008)).

■ We conclude that the charge error did not cause egregious harm. Defense counsel's questions and arguments reflect that the contested issues at trial were

whether there was evidence of forced entry and the credibility of the complainant and the roommate. The issue of appellant's mental state was not at all a focus of the trial or the closing arguments. *See Ash*, 930 S.W.2d at 195 (holding similar jury-charge error was not egregiously harmful in part because the only two issues that were seriously contested at trial had nothing to do with the defendant's mental state). Nothing in this record suggests that the jury was so confused by the complained-of instruction that appellant was denied a fair and impartial trial.

For these reasons, we conclude the record not show that the charge error resulted in harm so egregious that appellant did not have a fair and impartial trial *See Lopez*, 515 S.W.3d at 551. Appellant's first issue is overruled.

### ASSESSMENT OF ATTORNEY'S FEES

■ In his second issue, appellant argues that he is indigent and therefore the trial court erred in requiring him to reimburse the Galveston County Department of Court Services for his court-appointed attorney. A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs. Tex. Code Crim. Proc. art. 26.04(p). There was no evidence before the trial court, nor is there any evidence in our record, that appellant is not indigent, that a material change in appellant's financial circumstances has occurred, or that appellant has the financial resources to pay the costs of his court-appointed lawyer. Therefore, the trial court erred in requiring appellant to reimburse the Galveston County Department of Court Services for

his court-appointed attorney. The State concedes there is no evidence appellant's indigent status has changed, thus he should not be assessed attorney's fees. *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010) (holding court of appeals did not err in reforming the trial court's judgment to delete the award of attorney's fees because there was no evidence of appellant's ability to pay the costs of his court-appointed lawyer). Accordingly, we sustain issue two and reform the trial court's judgment to delete the assessment of attorney's fees.

### DEADLY-WEAPON FINDING

■ The jury found appellant guilty of aggravated robbery as charged in the indictment, which alleged use of a deadly weapon as the aggravating element.[2] *See* Tex. Penal Code § 29.03(a)(2). On an affirmative finding, the trial court is required to enter that finding in the judgment. Tex. Code Crim. Proc. art. 42.12 § 3g(a)(2); *see also Sampson v. State*, 983 S.W.2d 842, 843 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). The judgment, however, contains the entry "N/A" as to the "Findings on Deadly Weapon."

■ Where, as here, the record provides the necessary information to correct inaccuracies in a trial court's judgment, we have the authority to reform the judgment *sua sponte* to speak the truth. Tex. R. App. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Because an express finding of use or exhibition of a deadly weapon was made by the jury, we conclude the "N/A" entry in the judgment was made in error. Because the judgment fails to reflect the jury's express finding, we reform

---

**2.** In pertinent part, the indictment alleged appellant "did then and there ... cause bodily injury to [the complainant] by hitting the said [complainant] with a gun, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a gun."

the judgment to include a deadly-weapon finding.

## CONCLUSION

We reform the trial court's judgment to delete the assessment of attorney's fees. We further reform the trial court's judgment to reflect "Yes" as to findings on deadly weapon. As reformed, the judgment of the trial court is affirmed.