**Affirmed and Memorandum Opinion filed June 2, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00010-CR

---

### FVERSWAN RUNNEST ALFRED, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 183rd District Court
### Harris County, Texas
### Trial Court Cause No. 1648443

---

## M E M O R A N D U M   O P I N I O N

Appellant Fverswan Runnest Alfred appeals his conviction for aggravated robbery. In five issues, appellant contends that the evidence was insufficient to sustain his conviction, the trial court erred in its charge instructions regarding culpable mental states, and the trial court erred in admitting certain evidence, including lay opinion testimony, victim-impact testimony at the guilt-innocence stage, and evidence regarding an extraneous offense. We affirm.

## Background

The indictment charged that, on or about July 28, 2018, while in the course of committing theft of property owned by complainant and with intent to obtain and maintain control of the property, appellant intentionally and knowingly caused bodily injury to complainant, a person at least 65 years of age, by striking complainant with his shoulder. Appellant appeared on the first day of trial and was arraigned but failed to return for the guilt-innocence and punishment phases of trial.

Complainant testified that on July 28, 2018, he and his wife went to the bank and withdrew $500 to use on a trip to Mexico to celebrate the life of their deceased son. At that time, complainant was 71 years old. After they stopped at a McDonald's for lunch, complainant noticed a white SUV following them. When they next stopped at a dollar store, complainant's wife went into the store while complainant stayed in the car. While complainant was sitting in the car, appellant tapped on his window and complainant rolled the window down. Appellant told complainant that complainant's wife had fallen in the store and gotten hurt. Complainant thanked appellant, rolled up his window, exited the vehicle, and then locked it before proceeding into the store. When he entered the store, complainant saw his wife at the check out register unharmed. Complainant then heard "the smashing of a car window" and saw appellant leaning into the driver's side of complainant's vehicle.

As appellant removed complainant's wife's purse from the vehicle, complainant went out to confront him. Appellant began to leave, but complainant went around him and asked him to give the purse back. According to complainant, appellant moved as if he was going to hand over the purse but then leaned his shoulder forward and "bull rushed" complainant, knocking him to the ground.

2

Complainant said that he was stunned when he hit the ground and felt pain, and he heard appellant threaten complainant's wife, saying, "You better move, old lady. I've already knocked your old man down." By the time complainant was able to stand back up, appellant had made it back to his white SUV and had begun to drive. As he drove by complainant, appellant's sideview mirror hit complainant in the chest and knocked him back to the ground. Complainant said that when he was knocked down the second time, he could feel an injury to his left leg and chest. Complainant's lower back was also hurting at that time, and he was having trouble breathing. EMS was called to the store and transported complainant to the hospital where his injuries were treated and he was released.

On cross-examination, complainant acknowledged that when he first came out of the store and approached appellant, he was not afraid of appellant. Complainant also acknowledged appellant was trying to get away from complainant. When asked if he thought appellant tried to hurt him, complainant said, "No, I'm not sure." Complainant was able to identify appellant in a photo array. A Houston police officer described the identification as "[a] strong tentative."

Complainant's wife's testimony corroborated much of complainant's testimony. She explained that before going to the bank, they had placed flowers on their deceased son's grave and that every year, the family went to Mexico to celebrate the son's birthday. At the time appellant took her purse, the $500 they had just withdrawn from the bank and both of their passports were inside the purse. She said that after appellant smashed the window and grabbed the purse and her husband confronted him, appellant "let his shoulder down," rushed complainant, and knocked him backwards. Complainant appeared hurt and could not stand up at first. When she then demanded appellant return the purse, appellant said to her,

3

"All right, old lady. You better go on somewhere before I have you sitting on the ground like I got your old man out there."

At this point in her testimony, the following exchange occurred:

Q. [W]hen he said that to you, did that give you any indication whether or not what he did to your husband was an accident?

A. Was an accident?

Q. Yes. Did you believe that—

[Defense counsel]: Objection, Judge. She's being asked to form a conclusion.

THE COURT: Overruled.

Q. Based on what you saw happen to your husband, did you believe what he did was an accident?

A. No.

Later, during cross-examination, defense counsel noted that appellant had tried to get complainant "out of the way" by telling him that his wife had fallen inside the store. The following exchange then occurred:

Q. Can you infer from that that it wasn't his intention to hurt anybody, by trying to get them out the way?

A. Stealing my money hurted (sic) me.

Q. I know. I know.

A. That was money that I needed. My dead son, we were going to—

[Defense counsel]: Objection, objection, Judge.

THE COURT: Overruled.

You may answer the question.

A. (Continuing) We were going to celebrate my dead son's—

[Defense counsel]: I didn't ask that, Judge. Objection.

THE COURT: Counsel—

A. (Continuing) So, what he did hurted (sic) me, yes.

[Defense counsel]: Pass this witness.

4

Complainant's wife acknowledged she was unable to make an identification of appellant from a photo array. During her trial testimony, however, she was able to identify someone in the video as the person who robbed complainant.

A surveillance video taken of the front of the dollar store was also admitted into evidence. It shows some of the encounter between appellant and complainant but does not directly show appellant knocking complainant down with his shoulder. Still photos were captured from the surveillance video, and an investigating police officer circulated them to another officer at the station who "normally deal[s] with individuals that do certain crimes." That second officer testified that his specialized unit attempts to proactively investigate crimes that other officers do not typically deal with, "from robberies all the way to prostitution and drugs." The officer further stated that about two months after the alleged robbery of complainant, the officer came "into contact" with a white SUV being driven by appellant that matched the description of the vehicle appellant used in the alleged robbery. Defense counsel then stated during a discussion outside the presence of the jury, "I'm going to object to this witness because he's only offered to bolster their position and present evidence double that it was identification [sic] that it was the Defendant." The judge overruled the objection.

The trial court included complete statutory definitions of "intentionally" and "knowingly" in the abstract portion of the jury charge but limited the culpable mental states to the element of "causing bodily injury" in the application paragraph. The jury found appellant guilty of aggravated robbery and assessed his punishment at 29 years in prison and a $500 fine.

### Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence, we view all

the evidence presented at trial in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Among other possibilities, a person commits aggravated robbery if he commits robbery and causes bodily injury and the victim is sixty-five years of age or older. Tex. Penal Code § 29.03(a). A person commits robbery if, in the course of committing theft, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id*. § 29.02(a). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of theft. *Id*. § 29.01(1).

As discussed above, the indictment charged that appellant, while in the course of committing theft of property owned by complainant and with intent to obtain and maintain control of the property, intentionally and knowingly caused bodily injury to complainant, a person at least 65 years of age, by striking

6

complainant with his shoulder. Appellant specifically asserts in his first issue that the evidence was insufficient to establish that he intentionally or knowingly caused bodily injury to complainant. *See generally Garfias v. State*, 424 S.W.3d 54, 60–61 (Tex. Crim. App. 2014) (explaining that an assaultive offense causing bodily injury is a result-oriented offense). Appellant argues the evidence at most established recklessness, not intent or knowledge, and he highlights complainant's testimony that he was "not sure" if appellant intended to hurt him.

The Penal Code defines bodily injury as "physical pain, illness, or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). This definition encompasses even relatively minor physical contact if it constitutes more than offensive touching. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). Any physical pain, however minor, will suffice to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

As relevant to the Penal Code, a person acts intentionally with respect to a result of his conduct "when it is his conscious objective or desire to . . . cause the result." *Id*. §6.03(a). "A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id*. §6.03(b). A person's mental state may be inferred from circumstantial evidence such as acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Texas law presumes that a criminal defendant intended the natural consequences of his actions. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008).

Both complainant and his wife testified that after appellant smashed their vehicle's window and complainant went around him and asked him to give the purse back, appellant lowered his shoulder and charged at complainant, hitting the 71-year-old man in the chest and knocking him to the ground. Complainant said

7

that this caused him pain. Appellant then reportedly threatened to knock complainant's wife to the ground in the same fashion. This is not a close issue. The jury was well within its authority to conclude from this testimony that appellant intended to cause bodily injury to complainant or at least was aware that his conduct was reasonably certain to cause bodily injury. *See Cano v. State*, 614 S.W.2d 578, 579 (Tex. Crim. App. 1981) (holding evidence was sufficient to establish defendant intentionally or knowingly caused bodily injury when he hit or pushed complainant to the pavement while grabbing her purse); *see also Thompson v. State*, No. 03-14-00371-CR, 2015 WL 6460021, at *7 (Tex. App.—Austin Oct. 21, 2015, pet. ref'd) (mem. op.; not designated for publication) (holding jury could reasonably conclude defendant was aware that pulling on complainant's purse with enough force to knock her down was reasonably certain to cause bodily injury, and collecting similar cases). We need not even consider the testimony that appellant then struck complainant with his vehicle as he was fleeing the scene. We overrule appellant's first issue.

### *Charge Instructions*

In his second issue, appellant contends that when instructing the jury in the guilt-innocence phase of trial, the trial court erred in failing to limit the definitions of the culpable mental states to the result of appellant's conduct. Alleged jury charge error is reviewed using a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We must first consider whether error exists in the charge; if it does, we then consider whether the appellant has been harmed by the error. *Id*. The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id*. If an appellant preserves error, we must reverse if we find "some harm" to his rights. *See id*. (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). When, as occurred here, there was

8

no objection, we will reverse only for charge error that resulted in "egregious harm" to the appellant. *Id.*

Offenses may involve three conduct elements: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *See Herrera v. State*, 527 S.W.3d 675, 678 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *Ash v. State*, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.). Aggravated robbery involves all three conduct elements because the State must prove: (1) the defendant caused or placed another in fear of bodily injury (a result of the conduct); (2) the defendant caused bodily injury in the course of committing theft (the circumstances surrounding the conduct); and (3) the defendant unlawfully appropriated property (the nature of the conduct). *Herrera*, 527 S.W.3d at 678; *Ash*, 930 S.W.2d at 195. But even if an offense includes all three conduct elements, a trial court must still limit the culpable mental state definitions to the element or elements of the offense to which they apply. *See Herrera*, 527 S.W.3d at 678; *Ash*, 930 S.W.2d at 195.

Here, the trial court referenced all three conduct elements in defining the "knowingly" and "intentionally" mental states in the abstract portion of the charge, but the court failed to expressly limit the definitions to the conduct element or elements to which each applied in this case.[1] Assuming error,[2] because appellant

---

[1] The trial court defined "intentionally" and "knowingly" in the charge as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

[2] *See Herrera*, 527 S.W.3d at 679; *Ash*, 930 S.W.2d at 195; *see also Patrick v. State*, 906

9

failed to object to the charge, we may only reverse if the error was so harmful as to have denied him a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *Herrera*, 527 S.W.3d at 679. Such egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). To support reversal, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750.

In assessing the harm resulting from the inclusion of an improper conduct element in the definitions of culpable mental states, this court "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Cook v. State*, 884 S.W.2d 485, 492 n.6 (Tex. Crim. App. 1994); *Wesley v. State*, 605 S.W.3d 909, 918 (Tex. App.—Houston [14th Dist.] 2020, no pet.). When the application paragraph correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *See Patrick*, 906 S.W.2d at 493; *Wesley*, 605 S.W.3d at 918. Indeed, the Court of Criminal Appeals has held that "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Wesley*, 605 S.W.3d at 917.

The application paragraph in this case properly tracked the indictment and applied the intentionally and knowingly mental states to the result of appellant's alleged conduct.[3] Moreover, other abstract portions of the charge properly defined

---

S.W.2d 481, 492 (Tex. Crim. App. 1995) (holding trial court did not err in providing complete definitions of applicable mental states, where charged offense contained all three conduct elements, but erred in failing to limit the definitions to the elements to which they applied).

[3] The application paragraph read as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about

10

"theft," "in the course of committing theft," and other relevant terms.

Other factors to consider in assessing harm from jury charge error include the state of the evidence, the parties' arguments, and any other relevant information in the record. *See Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). As discussed above, the evidence strongly supports the conclusion that appellant committed aggravated robbery by intentionally or knowingly causing bodily injury to complainant in the course of committing theft. Appellant was clearly identified as the perpetrator, and complainant and his wife both testified that after acting like he was going to hand the purse over, appellant instead lowered his shoulder and rushed into complainant, hitting complainant in the chest and knocking the 71-year-old to the ground while taking the purse, which contained the couples' $500 and passports. Again, this was not a close case.

Appellant notes that in his closing arguments, the prosecutor highlighted appellant's conduct, the theft of the property, and complainant's injuries but did not specifically state that to find appellant guilty, the jury had to find that he knowingly or intentionally caused complainant bodily injury. The prosecutor did, however, emphasize the force that appellant used against complainant, explaining that appellant "ran through" complainant "like a running back heading for that touchdown." This simile could be read as suggesting appellant knew his forceful action was likely to cause pain or even intended that it would. It does not suggest appellant was egregiously harmed by any error in the jury charge. Appellant does

the 28th day of July, 2018, in Harris County, Texas, the defendant, Fverswan Runnest Alfred, did then and there unlawfully, while in the course of committing theft of property owned by [complainant] and with intent to obtain or maintain control of the property, intentionally or knowingly cause bodily injury to [complainant], a person at least sixty-five years of age by striking [complainant] with his shoulder, then you will find the defendant guilty of aggravated robbery, as charged in the indictment.

11

not cite and we discern no other relevant information in the record on the question of harm from any jury charge error. Having concluded that any error in the charge relating to the failure to expressly limit the mental state definitions to the conduct element or elements to which they applied in the abstract portion of the charge did not cause appellant egregious harm, we overrule his second issue.

### *Evidentiary Complaints*

Appellant additionally raises several evidentiary complaints, asserting the trial court erred in admitting lay opinion testimony and guilt-innocence stage victim-impact testimony from complainant's wife as well as evidence regarding an extraneous offense. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Like most alleged errors, evidentiary complaints must be preserved by making a timely and sufficiently specific objection, request, or motion in the trial court. *See* Tex. R. App. P. 33.1(a); *Wilkinson v. State*, 523 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). We will address each complaint in turn.

**Lay opinion testimony.** In his third issue, appellant asserts that complainant's wife was improperly permitted to offer lay opinion testimony when the prosecutor asked if she believed what appellant did to complainant was an accident and she responded, "no." Defense counsel objected to the question, stating, "She's being asked to form a conclusion," and the trial court overruled the objection. Assuming defense counsel's objection was sufficiently specific to preserve the lay-opinion-testimony argument made on appeal, we find no error in admitting the testimony.

12

Appellant specifically argues that complainant's wife "could not properly assert that [appellant] did not accidentally cause bodily injury." He further contends that her testimony in this regard was not useful to the jury. A lay witness may offer testimony in the form of opinions, but it must be limited to opinions that are "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Tex. R. Evid. 701; *see also Wade v. State*, No. PD-0157-20, 2022 WL 1021056, at \*8 (Tex. Crim. App. Apr. 6, 2022); *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997); *Williams v. State*, 402 S.W.3d 425, 436 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Perceptions include a witness's interpretation of information acquired through her senses or experiences at the time of the event. *Wade*, 2022 WL 1021056, at \*8. Such testimony can include opinions, beliefs, or inferences as long as they are drawn from the witness's own experiences or observations. *Id.* Even lay opinions regarding another person's culpable mental state are permissible if based on "the witness's objective perception of events (i.e. his own senses or experience)." *Fairow*, 943 S.W.2d at 899; *see also* Tex. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). An opinion is rationally based on perception if it is an opinion that a reasonable person could draw under the circumstances. *Wade*, 2022 WL 1021056, at \*8. An opinion not capable of reasonably being formed from the events underlying the opinion must be excluded. *Fairow*, 943 S.W.2d at 899.

Immediately before the testimony at issue here, complainant's wife had testified regarding what she observed appellant do to her husband and the threat he then made to do the same thing to her. The prosecutor prefaced the question regarding whether what appellant did was an accident by saying, "Based on what you saw happen to your husband . . . ." Complainant's wife's testimony was

13

clearly rationally based on her own perception of events. *See id.* ("[W]hile a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The jury is then free to give as much or as little weight to the opinion as it sees fit."). It was also helpful to the jury in determining a fact in issue, i.e., whether appellant acted with the requisite culpable mental state. *See, e.g.*, *Davis v. State*, 223 S.W.3d 466, 476 (Tex. App.—Amarillo 2006, pet. dism'd); *Chatham v. State*, No. 14-03-00859-CR, 2004 WL 2058396, at *5 (Tex. App.—Houston [14th Dist.] Sept. 16, 2004, no pet.) (mem. op.; not designated for publication). The testimony was not inadmissible merely because it was opinion testimony regarding appellant's mental state. *See Fairow*, 943 S.W.2d at 899; *see also* Tex. R. Evid. 704.

The trial court acted within its discretion in admitting testimony regarding whether appellant accidentally injured complainant. Accordingly, we overrule appellant's third issue.

**Victim-impact testimony.** In issue four, appellant contends the trial court erred in permitting complainant's wife at the guilt-innocence stage to testify that appellant's stealing her money hurt her. Appellant contends that this testimony constituted victim impact evidence that was improper coming either from complainant's wife instead of complainant or during the guilt-innocence phase of trial rather than the punishment phase, citing *Love v. State*, 199 S.W.3d 447, 456-57 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), and *Espinosa v. State*, 194 S.W.3d 703, 711 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

The testimony in question came in response to defense counsel's question asking whether appellant had intended to hurt anyone. When complainant's wife began to answer, counsel stated, "Objection, objection. Judge." The judge replied,

14

"Overruled. You may answer the question." As complainant's wife continued her answer, counsel stated, "I didn't ask that, Judge. Objection." Complainant's wife then finished her answer and counsel passed the witness. Although defense counsel objected to complainant's wife's answer, the only basis he identified for the objection was that her answer was nonresponsive to the question he had asked. On appeal, although appellant briefly asserts the answer was nonresponsive, his chief complaint is that it constituted improper victim impact testimony. Appellant did not assert in the trial court that the testimony was improper victim impact testimony; therefore, that issue was not preserved for our review. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (explaining that to preserve error, the trial objection must comport with the issues raised on appeal).

To the extent appellant has preserved and presented his assertion that the answer was nonresponsive, we hold that the trial court did not abuse its discretion in overruling the objection. As explained above, defense counsel asked complainant's wife if she could infer from the circumstances that appellant did not intend to hurt anyone. Counsel did not limit his question to bodily injury or physical pain, and complainant's wife's statement that the theft had hurt her was arguably in response to the question asked. The trial court's ruling was at least within the zone of reasonable disagreement; accordingly, we overrule appellant's fourth issue. *See Moses*, 105 S.W.3d at 627.

**Extraneous offense.** Lastly, in issue five, appellant contends the trial court abused its discretion in admitting evidence concerning an extraneous offense. Specifically, appellant complains about the testimony from a Houston police officer that during the course of an investigation about two months after the alleged robbery of complainant, the officer came "into contact" with a white SUV being driven by appellant that matched the description of the vehicle appellant used in

15

the alleged robbery of complainant. Interestingly, the officer did not expressly testify as to any extraneous wrongful conduct by appellant; the officer merely explained that he encountered appellant during an investigation and at the time, appellant was the sole occupant of the white SUV. The officer also testified, however, that he worked in a specialized unit that proactively investigates crimes "from robberies all the way to prostitution and drugs." Also, another officer testified that photographic stills from the surveillance video were circulated to an officer who "normally deal[s] with individuals that do certain crimes." Appellant's challenge therefore appears to be that the jury could have reasonably inferred from this testimony that the officer was investigating appellant for an extraneous offense.

Generally, evidence of a crime, wrong, or other act is inadmissible to show a person's character or that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b)(1). But extraneous offense evidence may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See id*. 404(b)(2); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). As appellant notes, the State offered the testimony regarding the officer coming into contact with appellant to prove appellant's identity by connecting him to the white SUV used in the alleged robbery of complainant. This is not the usual way in which extraneous offense evidence is used to establish identity, which typically involves comparing detailed characteristics of the charged offense with those of the extraneous offense to suggest one person must have committed both offenses. *See generally Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). Here, the actual identifying information was simply tying appellant to the vehicle used in the charged offense. The testimony that the officer who encountered appellant did so during an

16

undescribed investigation and that the officer worked in a specialized unit that handles crimes "from robberies all the way to prostitution and drugs" was superfluous to the connecting of appellant to the white SUV.

Regardless, defense counsel did not object when the officer testified that (1) he was in a specialized unit that conducted proactive investigations of crimes "from robberies all the way to prostitution and drugs"; (2) he came into contact with appellant during an investigation; (3) at the time of contact, appellant was the sole occupant of a white SUV; and (4) the officer recognized the white SUV in State's exhibit 8, a photo still taken from the surveillance video, because it was the same make and model and had the same license number.[4] Defense counsel finally objected when the prosecutor then began to ask, "And was this the same make, model—." Defense counsel only then asked to approach, and a conversation occurred regarding the testimony outside of the jury's presence in which counsel objected that the proffered testimony was improper bolstering because the State had other evidence of identity.

Appellant's argument on appeal is that the extraneous offense evidence was inadmissible because identity was not at issue in the case. However, even if defense counsel's bolstering objection in the trial court was substantively sufficient to preserve the argument made on appeal, it was untimely. *See* Tex. R. App. P. 33.1(a) (requiring timely objection to preserve error); *see also Wilkinson*, 523 S.W.3d at 827. As set forth above, counsel did not object until after all the complained of evidence had already been elicited. *See, e.g., Gonzalez v. State*, 563 S.W.3d 316, 322 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Because appellant did not object and urge his motion to suppress until after Deputy Amstutz

---

[4] Defense counsel also did not object when another officer testified that photo stills from the surveillance video were sent to an officer who "normally deal[s] with individuals that do certain crimes."

17

and others had given substantial testimony regarding the alleged illegally seized items, appellant's objection and the ruling on his motion to suppress were untimely."); *see also Wright v. State*, 374 S.W.3d 564, 582 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Erazo v. State*, 260 S.W.3d 510, 514 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Because it was not preserved for our review, we overrule appellant's fifth issue.

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/     Frances Bourliot
Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).

18