

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-24-00438-CR
_____

DAYTON JOSEPH GANNON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1789149

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Dayton Joseph Gannon appeals from his conviction for aggravated robbery. In two points, Gannon complains that (1) the evidence was insufficient to prove a threat of "imminent" bodily injury or death or that he placed the complainant in fear of same and (2) the jury charge failed to limit the Penal Code's culpable-mental-state definitions to the conduct elements to which they applied, resulting in egregious harm. Because we hold that sufficient evidence supports the challenged elements and that he was not egregiously harmed by any jury charge error, we will affirm.

## Background

The complainant, Eduardo Vazquez, went to a laundromat with his girlfriend. After putting their clothes in a dryer, they left to get something to eat. When they returned, Vazquez went inside and discovered that their clothes were gone. No one else at the laundromat had any information about who had taken their clothes, so Vazquez and his girlfriend drove around the shopping center parking lot and that of the shopping center across the street to see if they could find anyone with the clothes. After an unsuccessful search, they returned to the laundromat. When Vazquez went inside, he saw Gannon walk out of the restroom wearing Vazquez's shirt and tie-dye shorts.

Vazquez demanded that Gannon return his clothes. Gannon refused, claimed that the clothes were his own, and did something that prompted Vasquez to retreat

outside, where he retrieved or loaded the firearm he had with him and then continued to demand the clothes' return. Vazquez first testified that he went outside because Gannon took a knife out of his backpack. On cross-examination, however, he was played the video in which, standing outside the laundromat and demanding his clothes back, he exclaimed as Gannon approached the door, "You got a knife?" He agreed with Gannon's attorney that his exclamation seemed to indicate that in that moment, he was seeing the knife for the first time, and he further agreed that it was "fair" to say that he had retreated outside without waiting to see what Gannon was taking out of the backpack, i.e., before he knew that Gannon had a knife. Further confusing matters, Vazquez's girlfriend testified that Gannon picked up the knife from on top of a dryer. However, regardless of when Gannon picked up a knife or whether it came from his backpack or the dryer, the evidence showed that Gannon wielded a knife during the confrontation.

Vazquez testified that when he saw the knife, he felt "[t]hreatened immediately" and was afraid that Gannon might stab him. However, Vazquez still wanted to retrieve his clothes because he was "not [in] the best financial place." Vazquez, who worked as a security guard, had his firearm with him; at trial, he could not remember whether he had the gun in his pocket when he first confronted Gannon or whether he returned to the car to retrieve it. Regardless, Vazquez returned to his car at some point and either retrieved the gun or loaded it. While Gannon was inside and Vazquez outside, Gannon "would come towards the door," but he was

3

"never close enough . . . for [Vazquez] to[ ] . . . fe[el] like [he] had to discharge [his] weapon." Because Gannon "wasn't charging [him]," when Gannon withdrew away from the door, Vazquez "didn't feel . . . an immediate threat." However, Gannon kept approaching the door to say things like, "I don't know what you're talking about," and "[C]ome take it. If it's yours, come take it." Each time Gannon approached the door, Vazquez felt threatened. Sometimes when Gannon approached, he held a can of Coca-Cola in the same hand as the knife; Vazquez did not notice the can at the time.

At trial, the court admitted two short cell phone videos that Vazquez's girlfriend had recorded during part of the confrontation. The recordings were taken from outside the laundromat, but the building had glass walls and doors, so Gannon could be seen inside. In a twelve-second video, Vazquez was standing outside near the laundromat entrance, yelling at Gannon (who was inside) to return his clothes. As Gannon approached the door, Vazquez exclaimed, "You got a knife?" and backed away from the door. Gannon opened the door, stood in the doorway and took what could be interpreted as a combative stance,[1] yelled that the clothes were his, and went back inside. Then, in a five-second video, Gannon was shown walking inside the laundromat several feet away from the door, saying something that was not picked up

---

[1]The prosecutor described it to the jury as "bowing up."

4

on the video, and then walking back toward the door. Vazquez could be heard saying, "He keeps walking up to me with a knife, and he's refusing to give me my clothes."[2]

During the first video, Vazquez had something in his right hand, and that something could have been his firearm—whether loaded at that point or not—but the object cannot be clearly seen in the video. Vazquez testified that during the altercation, he told Gannon that he had a gun and may have pointed it at Gannon, but he then returned the gun to his pocket. He did not go back inside, and he kept his distance from Gannon. While Vazquez was speaking to the 911 dispatcher, Gannon fled. Some of the stolen clothes were found in a bag that Gannon left behind at the laundromat.

In addition to that of Vazquez and his girlfriend, the State put on testimony from one other witness who was at the laundromat that night and who knew Gannon. She told the jury that Vazquez had warned her that "some people were stealing clothes," and "then the next thing I know he started beefing with [Gannon] and said he was going to shoot [him], and then I don't know what happened." She did not see either man with a weapon. She also told the jury that before the police arrived, Gannon had asked her if he could put a bag in her car.

The jury found Gannon guilty of aggravated robbery, found the repeat-offender allegation in the indictment to be true, and assessed punishment at

---

[2]From the 911 call recording that was played to the jury, it appears that Vazquez was speaking to the 911 dispatcher.

15 years' confinement in the Texas Department of Criminal Justice. The trial court sentenced him accordingly.

## Discussion

## I. Evidentiary Sufficiency

In Gannon's first point, he asserts that the evidence is insufficient to prove a threat of imminent bodily injury or death. Under this point, he contends that (1) as for the "threatens" element, he did not threaten Vazquez because he picked up the knife only after being confronted by Vazquez, and the jury could not have rationally found that he intended Vazquez harm, and (2) as for the "places in fear" element, although Vazquez testified that he felt threatened when he saw Gannon's knife, he also "testified [that] he was not in *imminent* fear" as required by the statute.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's

6

cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## B. Applicable Law

A person commits robbery by threat if, (1) in the course of committing theft and (2) with the intent to obtain or maintain control of the property, (3) the person intentionally or knowingly (a) threatens another with imminent bodily injury or death *or* (b) places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2). If the person committing the robbery uses or exhibits a deadly weapon, the person commits aggravated robbery. *Id.* § 29.03(a)(2). "In the course of committing theft" includes "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."[3] *Id.* § 29.01(1). The indictment in this case tracked those statutes as modified by the facts of the case. Thus, the State had to prove among other things that Gannon intentionally or knowingly threatened Vazquez with imminent bodily injury or death

---

[3]Gannon does not dispute the sufficiency of the evidence to support this element.

7

or that he intentionally or knowingly placed Vazquez in fear of same. *See Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011) (holding that State can obtain robbery conviction upon proving lesser mental state of knowingly).

Proof of the "threatens" element focuses on the *nature* of the defendant's conduct. *Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006) (noting that "one can threaten without *necessarily* placing another in fear of imminent bodily injury"); *Donoho v. State*, 39 S.W.3d 324, 329 (Tex. App.—Fort Worth 2001, pet. ref'd) (noting that "a threat need not be voiced; it can also be communicated by the accused's actions or conduct" and concluding that defendant's conduct was sufficient to constitute threat to complainants). The "places in fear" element, on the other hand, considers the *result* of the defendant's conduct. In proving this element, the State must prove that (1) the defendant intended to place someone in fear or that the defendant was aware that his or her conduct was reasonably certain to place someone in fear and (2) the conduct had that effect. *See Howard*, 333 S.W.3d at 140 ("[R]obbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear. Rather, it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear."); *Jackson v. State*, No. 02-15-00103-CR, 2016 WL 354070, at *4 (Tex. App.—Fort Worth Jan. 28, 2016, no pet.) (mem. op., not designated for publication) (citing *Howard*, 333 S.W.3d at 140). The same evidence relied on by the State to establish that Gannon threatened

8

Vazquez or placed him in fear was also relevant to proving Gannon's culpable mental state as to that conduct. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) ("Intent can be inferred from the acts, words, and conduct of the accused.").

## C. Application

Under this point, Gannon challenges the evidence as to both the threatened and placed-in-fear elements of the statute. We disagree that the evidence was insufficient to show that Gannon threatened Vazquez with, or that Vazquez was placed in fear of, imminent bodily injury or death.

### (1) Sufficient evidence shows that Vazquez had fear of imminent injury

Regarding the placed-in-fear element, Gannon argues that the evidence establishes that during the encounter, Vazquez was not in fear of *imminent* bodily injury or death. We disagree that the evidence was insufficient to support the jury's finding. As noted,

- When confronted by Vazquez, Gannon neither returned the clothes nor left the laundromat, even after Vazquez went outside. Instead, he picked up his knife, claimed the clothes as his own, adopted aggressive bodily language, and repeatedly approached the door.

- Vazquez testified that when he saw Gannon's knife, he felt "immediately threatened." Vazquez further testified that he feared that he could be stabbed if Gannon charged him.

- Vazquez acknowledged that there were moments during the encounter when Gannon withdrew from the door and so he did not feel an "immediate threat," but Gannon repeatedly approached the laundromat door with the knife, and Vazquez said that he felt threatened each time Gannon did so. No testimony or other evidence contradicted Vazquez's

9

testimony that he felt threatened when he first saw the knife and each time Gannon approached the door with the knife.

- In one of the videos, when Gannon approached the door carrying the knife, Vazquez backed away.

- Even though Vazquez was armed, and even though he needed his clothes, he stayed outside and called 911 rather than go back inside or try to grab his clothes back from Gannon.

From this evidence, the jury could find beyond a reasonable doubt that while Vazquez was not in fear of immediate injury while he maintained distance from Gannon, he did fear that he would suffer imminent bodily injury if he went inside and tried to retake his clothes or if Gannon came close to him and that Gannon intentionally or knowingly placed him in such fear. *See Houston-Randle v. State*, 499 S.W.3d 912, 915 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (noting that evidence of "places in fear" element is not insufficient even when complainant testifies that he or she was not afraid if the complainant's conduct otherwise indicates fear and holding that when defendant's actions caused complainant to "part[ ] with his property" despite his "temperamental fortitude," the evidence was sufficient to support the "places in fear" element); *Ward v. State*, No. 04-13-00459-CR, 2014 WL 1390488, at *5 (Tex. App.—San Antonio Apr. 9, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that sufficient evidence supported finding that complainant had fear of imminent injury when, upon complainant's attempt to recover stolen property, defendant claimed to have a knife, and complainant backed away and called police in reaction to defendant's words and

10

conduct); *Black v. State*, No. 2-05-388-CR, 2006 WL 2507325, at *3 (Tex. App.—Fort Worth Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication) (defining "imminent" to mean "'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous'" (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989))). If the jury viewed Vazquez's testimony to contain contradictions about whether and when he felt fear of imminent injury, it was the jury's role to resolve those contradictions. *See Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). We overrule this part of Gannon's first point.

**(2) Sufficient evidence shows that Gannon threatened Vazquez**

As for proof that Gannon threatened imminent bodily injury, he argues that the State failed to prove this element because he "did not obtain the knife until *after* he was confronted by [Vazquez] regarding the clothes," that "[s]imply holding a knife does not constitute . . . an imminent threat," that he "did not point, raise, or move the knife toward [Vazquez] in any manner," and that the video evidence (and an image taken from the video) showed that he was not brandishing the knife as a weapon. We disagree that the evidence was insufficient to show that he intentionally or knowingly threatened Vazquez with imminent bodily injury.

Threats used to obtain someone else's property can look different from threats used to maintain possession of the property once stolen. By the time Vazquez

11

encountered him, Gannon had already appropriated the clothes. In order to keep them, Gannon did not need to get close to Vazquez with the knife. Rather, it served his purpose to force Vazquez to keep a distance. Gannon's conduct achieved that result. Vazquez alluded to this point in cross-examination; when Gannon's attorney asked him if a person would be furthering a theft of his clothes just by having a knife and a Coca-Cola can in his hand while talking to him, Vazquez answered, "Yes, because I can't physically come take my clothes from you at that point."

We conclude that regardless of whether Gannon's words alone or his aggressive posture would have risen to the level of a threat, the jury reasonably could have found that those actions combined, along with his picking up a knife in response to Vazquez's attempt to retrieve his clothes, were sufficient to constitute a threat. *See Boston v. State*, 410 S.W.3d 321, 326, 327 (Tex. Crim. App. 2013) (noting that party's "conduct in reaching over the counter and taking money from the cash register was threatening because his actions were 'a menacing indication of (something dangerous, evil, etc.)'" and "there was sufficient evidence for a rational jury to infer that [the party] threatened [the complainant] by his actions" (referencing dictionary definition of "threaten" set out in *Olivas*, 203 S.W.3d at 345)); *Horn v. State*, 647 S.W.2d 283, 284 (Tex. Crim. App. 1983) (noting that "[a] threat can be communicated by action or conduct as well as words"); *Sexton v. State*, No. 05-08-00678-CR, 2009 WL 4197877, at *3 (Tex. App.—Dallas Nov. 25, 2009, no pet.) (not designated for publication) ("Threats may be communicated through action, conduct, or words."); *cf. Rose v. State*,

12

672 S.W.2d 639, 640 (Tex. App.—Fort Worth 1984, pet. ref'd) ("[W]here one causes another to believe he has a firearm and by his acts forces the victim to give him his property, we hold the threat to be proved.").

Gannon contends, however that when he picked up the knife, he "was not threatening [Vazquez] but instead protecting himself from any further confrontation" and that his "exhibition of the knife after the confrontation was not an act of placing [Vazquez] in imminent danger, but rather a reaction to the confrontation by a man much larger than him brandishing a gun." Gannon's characterization of his actions does not account for the full context of his actions. The evidence showed that the person from whom he was "protecting himself" was the owner of the clothes that he had stolen; that the confrontation was the owner's attempt to retrieve his clothes; that when confronted, Gannon neither surrendered the clothes nor left the laundromat; that he instead aggressively resisted the owner's attempt to retrieve the clothes by, among other things, wielding a knife; that even after the owner retreated outside and stayed there, Gannon continued to approach the owner with the knife and refused to surrender the clothes; and that Gannon's wielding the knife kept the owner outside and away from his clothes. From the video and witness testimony, the jury could have found that by his words and conduct, including his wielding a knife, Gannon intended to keep Vazquez from retrieving his clothes or knew that his conduct would have that effect.

13

Gannon argues that the jury could not have rationally found that he "was specifically *intending* imminent harm." [Emphasis added.] But while the State had to prove that Gannon intentionally or knowingly *threatened* imminent bodily harm (or placed Vazquez in fear of such), it did not have to prove that Gannon intended to actually harm anyone. We overrule the remainder of Gannon's first point. *See Boston*, 410 S.W.3d at 327; *Houston-Randle*, 499 S.W.3d at 915; *see also Weakley v. State*, No. 04-19-00828-CR, 2020 WL 3065434, at \*2 (Tex. App.—San Antonio June 10, 2020, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient regardless of whether defendant actually threatened complainant when complainant testified that he felt intimidated and threatened by defendant's conduct); *Gebreyesus v. State*, No. 05-19-00063-CR, 2019 WL 6872840, at \*3 (Tex. App.—Dallas Dec. 17, 2019, no pet.) (mem. op., not designated for publication) (setting out cases in which complainant reasonably felt fear in circumstances when defendant did not make explicit threats).

## II. Jury Charge

In Gannon's second point, he argues that the jury charge "failed to limit the mental states to specific intent [and that the error resulted] in egregious harm." His primary complaint under this point is that the charge includes definitions of culpable mental states without limiting those definitions to the elements to which they apply. He more specifically complains that the definitions of "intentionally" and "knowingly" that apply to the result-of-conduct elements should have been limited to

14

the "places in fear" element, while the definitions of "intentionally" and "knowingly" that apply to the nature-of-conduct elements should have been limited to the "threatens" element. To address his point, we discuss the conduct elements applicable to aggravated robbery, the correlated culpable mental states, the charge in this case, and what the record reveals regarding harm. We conclude that Gannon did not suffer egregious harm from the charge issues of which he complains.

## A. Aggravated Robbery and the Penal Code's "Conduct Elements"

Not every offense element requires a mens rea. *Chandler v. State*, 855 S.W.2d 38, 41 (Tex. App.—Fort Worth 1993, no pet.); *see Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015) (noting circumstance of "dating relationship" as an offense element but not applying any culpable mental state to it); *Celis v. State*, 416 S.W.3d 419, 424 (Tex. Crim. App. 2013) (stating that only one element of offense in that case required a culpable mental state). However, each offense has at least one "conduct element" that "alone or in combination [with other conduct elements] form the overall behavior [that] the Legislature has intended to criminalize," and offense statutes generally require a culpable mental state to apply to conduct elements. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *but see Fleming v. State*, 455 S.W.3d 577, 581 (Tex. Crim. App. 2014) (discussing strict liability offenses that require no mens rea). The Penal Code has three categories of conduct elements:[4]

---

[4]In *Price*, the Court of Criminal Appeals stated that Section 6.03 "sets out . . . *two* possible conduct elements—nature of the conduct and result of the conduct,"

nature-of-conduct elements, result-of-conduct elements, and circumstances-of-conduct elements. Tex. Penal Code Ann. § 6.03; *McQueen*, 781 S.W.2d at 603 (discussing Section 6.03).

For a nature-of-conduct crime, such as gambling, a specific act is criminalized because of its "very nature," regardless of the result from that conduct. *McQueen*, 781 S.W.2d at 603; *see Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (stating that for nature-of-the-conduct offense, "it is the act or conduct that is punished"). With such an offense, the culpable mental state must apply to the defendant's "committing the act itself." *McQueen*, 781 S.W.2d at 603. With a result-of-conduct offense, such as murder, an act is criminalized because of its result. *Id.*; *see* Tex. Penal Code Ann. § 19.02(b). For that type of offense, the defendant must have a culpable mental state as to the result.

Finally, with a circumstances-of-conduct offense, "otherwise innocent behavior [is made] criminal because of the circumstances under which it is done," and "a culpable mental state is required as to those surrounding circumstances." *McQueen*, 781 S.W.2d at 603. For example, using a vehicle is not by itself a criminal act, but if a person uses a vehicle without the owner's effective consent, that circumstance makes

along with "the effect of the circumstances surrounding the conduct." 457 S.W.3d at 441 (emphasis added). In *Price*, the offense at issue contained a circumstance element that, under the court's analysis, was jurisdictional but not a "conduct element" to which a culpable mental state applied. Since *Price*, the court has again said that Section 6.03 contains *three* conduct elements, one of which is the circumstances surrounding the conduct. *See Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022).

the act unlawful. *Id.* Thus, "a culpable mental state is required as to those surrounding circumstances." *Id.*

With respect to Gannon's complaint on appeal, intentionally or knowingly threatening a person is a nature-of-conduct element. *Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014); *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.). Intentionally or knowingly placing another in fear, on the other hand, is a result-of-conduct element.[5] *Servin*, 582 S.W.3d at 632.

### B. Culpable Mental States and Jury Charges

The Penal Code defines each culpable mental state, with different definitions for each conduct element to which the mental state applies. Tex. Penal Code Ann. § 6.03. Thus, the Penal Code provides that a person acts "intentionally" (1) with

---

[5]Additionally, courts have held that "in the course of committing theft" is a circumstances-surrounding-conduct element. *Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001, pet. ref'd). In that case, a culpable mental state should apply to it. *See McQueen*, 781 S.W.2d at 603. However, neither party's brief discusses what culpable mental state, if any, should apply. Regardless, in this case, Gannon has not argued that there was any dispute as to this element, that the charge was erroneous as to this element, or that he was harmed by any error in the charge as to this element. Further, under the harm standard discussed below, Gannon was not harmed by the charge's failure to instruct the jury about which culpable mental state applies to this element because, as he acknowledges, there was no dispute—in the evidence or arguments—that he had committed theft of Vazquez's clothes, and the defense acknowledged the theft in closing arguments. *See Chandler v. State*, No. 04-24-00759-CR, 2025 WL 3651930, at *6 (Tex. App.—San Antonio Dec. 17, 2025, no pet. h.) (mem. op., not designated for publication) (noting that "[w]hile aggravated robbery does involve all three conduct elements, not every case requires jurors to navigate those distinctions" and focusing analysis of jury-charge complaint on "whether the jury was misled about how the mental states applied to the conduct that was actually at issue at trial").

respect to the *nature* of the person's conduct when it is the person's conscious objective or desire to engage in the conduct and (2) with respect to a *result* of the person's conduct when it is the person's conscious objective or desire to cause the result. *Id.* § 6.03(a). As for the mental state of "knowingly," a person acts with that mental state (1) "with respect to the *nature* of his conduct . . . when he is aware of the nature of his conduct"; (2) with respect to the *result* of his conduct "when he is aware that his conduct is reasonably certain to cause the result"; and (3) with respect to the *circumstances* surrounding the person's conduct when "he is aware . . . that the circumstances exist." *Id.* § 6.03(b) (emphasis added).

A jury charge is erroneous if it includes mental state definitions that do not apply to the offense. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). For example, for a result-of-conduct offense, the charge should not include the culpable-mental-state definitions applicable to nature-of-conduct offenses. *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994). Further, when an offense contains more than one conduct element, the jury charge should tell the jury which definitions apply to the various elements. *Id.* at 296 n.16 (providing example of jury charge in capital murder context); *Herrera v. State*, 527 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (providing as an example that for aggravated robbery by causing bodily injury, a correct charge would introduce the mental-state definitions applicable to the causing-bodily-injury element with, "The following definition applies to the mental state in causing bodily injury").

18

**C. The Jury Charge in This Case**

Here, the abstract part of the jury charge informed the jury that "[a] person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." It then included definitions of "intentionally" and "knowingly" applicable to the nature of a person's conduct, the result of a person's conduct, and the circumstances of a person's conduct. Because robbery by threat can contain all three conduct elements, the trial court did not err by including definitions applicable to all three. *See Gonzalez v. State*, No. 06-25-00055-CR, 2025 WL 3199446, at *5 (Tex. App.—Texarkana Nov. 17, 2025, pet. filed) (mem. op., not designated for publication); *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). However, the charge did not instruct the jury which definitions applied to each conduct element; more specifically to Gannon's complaint, the charge failed to clarify for the jury which mental state definitions applied to "threatens" or "places in fear." As Gannon argues, this failure to limit the definitions was error. *See Herrera*, 527 S.W.3d at 679.

However, Gannon did not object to the charge. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. In making an egregious-harm determination, we must consider "the actual degree of

19

harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

### D. No Harm in the Record

Gannon asserts that because of the charge's failure to limit which culpable-mental-state definitions applied to the "threatens" and "places in fear" elements, the jury was "allowed to convict without proof of either one." Gannon contends that he was egregiously harmed because "by not properly requiring the [S]tate to prove th[e] requisite conduct element[s] and specific mental state[s]," the charge "served to negate the only defensive issue in the case"; "[his] entire defense was predicated upon the fact [he] did not intend to place [Vazquez] in fear of imminent injury" and "lack[ed] . . . any specific intent to threaten imminent harm of bodily injury or death," and "[t]he 'threaten' and 'place in fear' elements of the offense were the only factually contested issues."

20

### 1. Indictment and Charge

The indictment and charge weigh against egregious harm. The indictment largely tracked the relevant Penal Code provisions as modified by the facts of the case. The jury charge likewise tracked the relevant statutes as modified by the factual allegations in the indictment. *See Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) (describing hypothetically correct jury charge as one that, among other things, accurately sets out the law and is authorized by the indictment); *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (stating that the law as authorized by indictment means offense elements as modified by charging instrument's allegations); *see also In re J.C.*, No. 04-24-00795-CV, 2025 WL 3227934, at *4 (Tex. App.—San Antonio Nov. 19, 2025, no pet. h.) (mem. op., not designated for publication) ("Courts have repeatedly found that a jury charge that tracks the statutory language is generally not egregiously harmful."); *Gonzalez v. State*, No. 11-22-00117-CR, 2024 WL 2965154, at *5 (Tex. App.—Eastland June 13, 2024, no pet.) (mem. op., not designated for publication) (holding similarly).

Additionally, contrary to Gannon's argument, the charge would not have led the jury to convict without sufficient proof or negated his defense. As to the "places in fear" element, courts have held that when an application paragraph requires a finding that the defendant "caused" bodily injury and that element is directly modified by "intentionally and knowingly," it is "obvious that the 'result of conduct' and 'cause the result' language [were] the applicable portions of the . . . definitions" of

21

"intentionally" and "knowingly" in the charge. *Campbell*, 664 S.W.3d at 247. Similarly, although the application paragraph in this case tracked the statute—and thus contained a clause set off by commas between "intentionally or knowingly" and did "threaten or place . . . in fear"[6]—the culpable mental states directly and clearly modified "threaten or place in fear." Further, the statute's "places in fear" phrasing is another way of saying that the defendant caused the complainant to be in a state of fear. *See Cook v. State*, No. 01-19-00513-CR, 2020 WL 7502055, at *3 (Tex. App.— Houston [1st Dist.] Dec. 22, 2020, no pet.) (mem. op., not designated for publication) (noting that under the "placed in fear" element, the factfinder may conclude that a person "perceived fear" even in the absence of express threats); *Ward*, 2014 WL 1390488, at *5 (noting that evidence supported finding that complainant was placed in fear of imminent harm when complainant testified that he was afraid that defendant would harm him). Thus, it was obvious that the result-of-conduct definitions applied to that element. *See Hughes*, 897 S.W.2d at 296 ("Although the definitions of 'intentionally' and 'knowingly' indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense.").

---

[6]The application paragraph stated that the jury should find Gannon guilty if it found from the evidence beyond a reasonable doubt that on the day in question, Gannon "intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place [Vazquez] in fear of imminent bodily injury or death, and [Gannon] used or exhibited a deadly weapon, namely, a knife."

"[T]he facts, as applied to the law, in the application paragraph[ ] pointed the jury to the appropriate portion of the definitions." *Patrick*, 906 S.W.2d at 493.

As for the "threatens" element, if the jury incorrectly applied the result-of-conduct definitions to the "threatens" element, the jury would have had to find that Gannon's conscious desire was to cause a threat to Vazquez or that he was aware that his conduct was reasonably certain to cause that result. *See* Tex. Penal Code Ann. § 6.03 (a), (b). Under the circumstances of this case, for Gannon to have engaged in conduct with awareness or intention that the conduct would *result* in a threat to Vazquez, he must have also intended or known of the conduct's threatening *nature*, i.e., that it was the kind of conduct that would have that result. *Cf. Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (stating that for "knowing murders, the distinction between result of conduct and nature of conduct blurs because awareness of the result of the conduct necessarily entails awareness of the nature of the conduct as well. . . . To be aware that his conduct is reasonably certain to result in death, the actor must also be aware of the lethal nature of his conduct"). In other words, applying the result-of-conduct mental state definitions would still have required the jury to find that Gannon was aware of or intended the threatening nature of his conduct. The charge as a whole weighs against egregious harm.

### 2. Voir Dire

The defense did not discuss culpable-mental-state definitions in voir dire, but the prosecutor did. The prosecutor told the jury that the State "ha[d] to prove a

mental state in this case" and provided the jury with some of the culpable mental states' definitions. However, the prosecutor's definition of "knowingly" omitted the part of the definition applicable to result-of-conduct offenses. But then, the prosecutor gave the jury an example of how "intentionally" could apply to conduct (intentionally aiming a gun at and shooting a person) and how a person could knowingly cause a result (firing in the general direction of someone the actor wished to kill but hitting someone else). Thus, although the prosecutor's "knowingly" definition omitted the part of the definition applicable to result-of-conduct offenses, he told the jury how "knowingly" could apply to the result of conduct.

The prosecutor's voir dire statements did not clarify for the jury which mental-state definition applied to "threatens" or "places in fear," but neither did the prosecutor apply the wrong definitions to those elements or instruct the jury that it could convict without evidence of a mental state as to those elements.

### 3. Opening Statements

In the State's opening statement, the prosecutor asserted that when Vazquez went to retrieve his clothes, "this defendant decided to pull out a knife and get into a confrontation with [Vazquez]. And [Vazquez], *fearing for his safety*, retrieved his gun from his car, held it down, didn't use it, and they videoed him, this defendant, and called 9-1-1." [Emphasis added.] This assertion, though not using the word "result," told the jury that Gannon's conduct resulted in Vazquez's fearing for his safety.

In the defense's opening statement, Gannon's attorney told the jury that with respect to "places in fear," the jury should focus on Gannon's mental state regarding the result of his actions: "The elements that you need to pay attention to are the knowingly and intentionally *trying to put Mr. Vazquez in fear [for] his life.*" [Emphasis added.] Thus, at least as to the "places in fear" element, the jury learned in opening statements that the "places in fear" element focuses on the result of the defendant's conduct and that Gannon must have intentionally or knowingly tried to cause that result.

### 4. State of the Evidence

There was no dispute that Gannon took Vazquez's clothes and refused to return them on Vasquez's demand. The jury had video evidence from which it could see some of Gannon's behavior and whether he held a knife. The jury also heard testimony from Vazquez and his girlfriend that supported a finding that Gannon threatened Vazquez and that his conduct placed Vazquez in fear. From the same evidence, the jury could find that Gannon intended or knew that his conduct was threatening and that his conduct was reasonably certain to place Vazquez in fear. *See Herrera*, 526 S.W.3d at 809–10 (stating that the requisite culpable mental state "is almost always proven through circumstantial evidence"; that a jury may infer a culpable mental state from the defendant's acts, words, and conduct; and that a jury may further infer that defendant intended the natural consequences of his actions). The force of the evidence of Gannon's guilt weighs against egregious harm.

25

Gannon argues, however, that the disputed issue at trial was his culpable mental state and that the jury charge negated his defense. He did raise the issue of intent several times; as discussed, Gannon told the jury in opening statements that it needed to pay attention to whether he had "knowingly [or] intentionally tr[ied] to put Mr. Vazquez in fear [for] his life." Further, his attorney asked the investigating detective a few questions about the mental state required for the "places in fear" element:

> Q. Doesn't the actor have to intend to place the other person in fear?

> A. I believe by that video you will see that the victim is walking backwards and Mr. Gannon is walking forward.

> Q. That's not my question. My question is not simply does Mr. Vazquez feel fear, he has to be—the person who is doing the robbery has to put the intent to place them in fear; is that correct?

> A. That intent is in that person's brain, not mine.

> Q. But just simply because maybe I'm sitting here today I feel afraid of you doesn't mean you have the intent to put me in fear, correct?

> A. Right.

However, defense counsel's questioning of witnesses focused primarily on (1) whether Gannon had committed an act or acts that could constitute a threat—e.g., whether he came near to or lunged at Vazquez with the knife and whether his posture in their interaction was aggressive and threatening—and (2) whether Gannon's behavior resulted in Vazquez's being placed in fear of imminent bodily harm. Defense

26

counsel's questioning of witnesses did not focus on what Gannon intended or knew about his conduct when he picked up the knife and told Vazquez to "come and take it" or whether Gannon intended to place Vazquez in fear or knew that was a likely result of his actions. The presentation of evidence does not support Gannon's argument that the charge vitally affected his defense or the very basis of the case.

Moreover, the questioning of the detective suggested (correctly) that the "places in fear" element is a result-of-conduct element. That testimony was consistent with what the jury had heard in opening statements about committing robbery by placing a person in fear, i.e., that the actor must have a culpable mental state as to that result. That questioning weighs against egregious harm as to that element.

### 5. Closing Arguments

In the State's closing argument, the prosecutor twice reminded the jury of robbery's elements as charged in the indictment, addressed the evidence relating to the "threaten" and "places in fear" elements, and told the jury that "there is intent to threaten [Vazquez] with serious bodily injury or death with a deadly weapon. You can see it for yourself. You can hear it for yourself." The argument told the jury that Gannon's conduct constituted a threat and also that it had the result of placing Vazquez in fear. Further, the prosecutor told the jury that Gannon's threatening behavior was intentional. The argument did not, however, spell out for the jury which "intentionally" (or "knowingly") definitions applied to the elements.

As for defense counsel's closing argument, Gannon's brief excerpts part of the arguments and concludes from those excerpts that "the defensive theory was the lack of any specific intent to threaten imminent harm of bodily injury or death" and that "[t]he charge negated this defense by not properly requiring the [S]tate to prove this requisite conduct element and specific mental state." We disagree.

The defense's closing argument mentioned both applicable culpable mental states, telling the jury that Gannon had to have "intentionally, knowingly threatened, or intentionally, knowingly placed another in fear of imminent bodily injury or death." However, the argument primarily focused on Gannon's conduct, not his mental state.

When discussing the evidence, the argument challenged whether Gannon had used the knife to threaten Vazquez, not whether he had the requisite mental state. In the parts of the argument on which Gannon relies, his attorney argued that Gannon did not "advance [on] anybody with a knife" and did not "stab the knife in a motion like this" and that Vazquez never testified that the knife had been pointed at him or that Gannon had "threatened to cut [him]. . . . The knife is just there, and it's a red herring." That is, the argument was not that Gannon did not intend to or knowingly threaten Vazquez or place him in fear of imminent bodily injury; it was that Gannon's behavior was not threatening and did not cause Vazquez to have such fear.

The closing arguments did not remedy the charge error by telling the jury which culpable-mental-state definitions to apply to each element, but neither did they tell the jury to apply the wrong mental state definitions or that no culpable mental

state was required as to the "threatens" or "places in fear" elements. Moreover, closing arguments did not indicate that Gannon's lack of a culpable mental state was the focus of his defense. *See Wright v. State*, No. 02-15-00399-CR, 2016 WL 6520189, at *4 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication) (pointing out that incomplete mental-state definitions in jury charge did not vitally affect defendant's defensive theory because defendant's theory was that he did not use or exhibit a knife, not that he did not intentionally or knowingly use or exhibit a knife). The closing arguments do not show egregious harm.

### 6. Other Matters

The jury sent out multiple notes while deliberating, and those notes indicated that the jurors had questions about the evidence relevant to whether Vazquez had actually been placed in fear. They asked, "In [Vazquez's] testimony, can we please hear again how he answered the question about whether he felt [Gannon] charged at him," and "In [Vazquez's] testimony, how did he answer the question of whether he was in fear when asked by [the prosecutor]?" In response to the first question, the trial court brought the jury into the courtroom and read out the parts of Vazquez's testimony in which he had stated that when he was outside and Gannon was inside the laundromat and not "coming after [him]," Vazquez "didn't feel, like, an immediate threat," and that Gannon had not pointed the knife at him in a threatening manner or lunged at him with the knife. In response to the latter question, the trial court read to

the jury the part of Vazquez's testimony in which he stated that he felt "[t]hreatened immediately" when Gannon pulled out a knife.

Based on these juror notes, the jury apparently had some questions regarding the nature and result of Gannon's conduct—specifically, Vazquez's perception of and reaction to Gannon's conduct.[7] But the notes do not indicate that the jury was confused about what mental state Gannon had or was required to have as to the "threatens" or "places in fear" elements.

### 7. Conclusion

Considering the indictment, the charge as a whole, voir dire, the trial evidence, opening statements and closing arguments, and the jury's questions and the responses thereto, we conclude that any error in the charge did not affect the very basis of the case, deprive Gannon of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *See Taylor*, 332 S.W.3d at 490 (setting out egregious harm standard). We overrule Gannon's second point.

### Conclusion

Having overruled Gannon's two points, we affirm the trial court's judgment.

---

[7]After the trial court and parties reviewed the jury's first note, the trial court stated, "I think we all agree that this note does not really specify as to what they are in disagreement about." Nevertheless, because the pertinent testimony was "relatively short," the court proposed bringing the jury out and reading the relevant testimony, and the parties agreed to that plan.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 5, 2026